IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| ANGELICA SERRANO,<br>*Plaintiff,*<br><br>VS.<br><br>GALVESTON COUNTY, SHERIFF HENRY TROCHESSET, IN HIS OFFICIAL CAPACITY, DR. GARY KILLYON, VITAL CORE HEALTH STRATEGIES,<br>*Defendants.* | §<br>§<br>§ Case. No. 3:23-cv-00008<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE DISTRICT COURT JUDGE.:

Plaintiff, Angelica Serrano ("Plaintiff" or "Ms. Serrano") files this her First Amended Complaint, mooting the pending Motion to Dismiss against Defendants Galveston County and Galveston County Sheriff, Henry Trochesset, in his official capacity, ("County Defendants" Collectively herein), Dr. Gary Killyon, in his Individual Capacity, VitalCore Health Strategies ("Medical Providers" "VitalCore" herein) (collectively "Defendants"), and in support thereof show as follows:

### INTRODUCTION

1. This is an action brought by Ms. Serrano against Defendants for Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983 for claims of conditions of confinement, delay or denial of medical care, failure to train or supervise, illegal detention, and excessive force.

2. Ms. Serrano turned herself into the Galveston County Jail to do what she thought was

right and to pay her debt to society.

3. She started working as a green and white, someone who goes outside and cleans up the trash on the ground under supervision, commonly known as a trustee role in nature.

4. She fell deathly ill but was denied transport to the hospital.

5. It was not until she was critical that she was finally transported.

6. As a result of the delay and denial of care she has permanent physical injuries and mental anguish

## PARTIES

7. Plaintiff, Angelica Serrano, is an individual residing in Harris County, Texas.

8. Defendant, Galveston County is a municipality in Texas. Galveston County is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case, acted under the color of law. Galveston County may be served with citation through the Galveston County Judge or wherever he may be found.

9. Defendant Henry Trochesset is an individual who may be served with citation at his place of employment located at 601 54th Street, Galveston, Texas 77551, or wherever he may be found. Sheriff Trochesset is being sued in his individual capacity and official capacity at all times relevant to this case acted under the color of law.

10. Dr. Gary Killyon is an individual who may be served with a citation at his place of employment located at 601 54th Street, Galveston, Texas 77551, or wherever he may be found. Dr. Killyon is being sued in his individual capacity and at all times relevant to this case, acting under the color of law as the supervising physician of the jail.

11. Defendant Vital Core Health Strategies is a corporation that may be served with

citation through its registered agent wherever he may be found. VitalCore is a "person" under 42 U.S.C. §1983, acting under color of law at all times relevant to this case.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over Ms. Monroy's state and federal claims under 28 U.S.C. sections 1331 and 2201, 42 U.S.C sections 1983, 1985, and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and supplemental jurisdiction under 28 U.S.C. section 1367(a) to hear Plaintiff's state law claims. The venue is proper in this Court because the incidents at issue occurred in the Southern District of Texas, Galveston County, Texas.

13. Ms. Serrano seeks monetary relief up to $2,500,000.00, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorneys' fees, plus any and all other monetary and equitable relief to which the Court deems Ms. Serrano entitled.

## FACTUAL BACKGROUND

*Ms. Serrano's Background*

14. Ms. Serrano is a loving daughter and friend to her family, friends, and neighbors.

15. She resides in Harris County, Texas.

16. She was a healthy woman without any known serious medical and mental health issues.

17. She is very skilled and talented in many areas and worked in various fields, including as a mechanic at her family's auto repair shop.

*Galveston County's Custody of Ms. Serrano*

18.     On December 24, 2020, Ms Serrano turned herself into the Galveston County Jail to do what she thought was right and to pay her debt to society.

19.     She started working as a green and white, which is someone who gets to go outside and clean up the trash on the ground under supervision but later on quit because she was cleaning up other "people's poop".

20.     During her time of service, Ms. Serrano got sick and acquired a minor rash all over her body.

21.     She worked for two months, but only a few days were deducted from her sentence, which she didn't find out not until she was almost free, and so she decided to quit.

22.     Doe 1 unnecessarily tasered Ms. Serrano while in custody, violating her 4th and 8th amendment right to be free from unreasonable force based on her verbal defiance and refusal to work. Ms. Serrano was both a pre-trial, before she was sentenced and post trial detainee, after she was sentenced.

23.     She was placed in a filthy solitary cell, where other former inmates in the Galveston County jail lost their lives. She did not lose her life but she became deathly ill.

24.     Because of her illness, she couldn't manage to eat, walk, or go to the bathroom to shower, so she asked for help.

25.     She told the jailer guards that she was already starting to swell, but she did not receive any help.

26.     Ms. Serrano begged and screamed for help.

27.     Because no jailer, employee, contractor, representative, or agent of Galveston County

and/or Galveston County Jail properly monitored her holding cell area, as required by law.

28. Ms. Serrano was left without any medical assistance for her initial medical emergency.

29. Her illness progressed, and she remained on lockdown.

30. Defendants, Killyon, the medical director and jail physician at Vitacare did nothing to address the escalating nature of the distress that Ms. Serrano was experiencing.

31. No jailer or nurse at Galveston County Jail requested medical assistance from the on-site medical staff from Vital Core Health Strategies.

32. The Galveston jailers retaliated against Ms. Serrano for her defiance and refusal to work.

33. Defendants, jailer's and medical personnel failed to screen inmates for medical and mental health issues and failed to monitor cell areas frequently.

34. Despite her obvious need for serious medical care, Doe Jailers, Vital Core Health Strategies staff members ignored her serious medical needs.

35. Galveston has a long-standing policy to deny transport to patients with serious medical needs until the need becomes critical, although they do not have staff properly equipped or trained to care for patients facing serious medical needs and certainly not critical needs.

36. The defendants choice not promptly transport or request to transport Ms. Serrano to the emergency room at the hospital at the immediate signs of distress.

37. After a few days of suffering from her illness, Ms. Serrano was seen by a non-medically trained Deputy, named Rosenberg.

38. Deputy Rosenberg called medical personnel to see Ms. Serrano.

39. When Deputy Rosenberg demanded medical personnel to see Ms. Serrano beyond the cursory view from a far, and it was the only time when Ms. Serrano was examined, she was critical and only then was she transported to the University of Texas Medical Branch Emergency room (UTMB).

40. Once she wa at UTMB she was found to be in critical condition with a serious life threatening infection

## CLAIMS

*42 U.S.C. § 1983 Fourth, Fourteenth, and Eighth Amendment Violations Against All Defendants*

41. Plaintiff incorporates by reference all paragraphs contained herein. This is a civil rights Eighth Amendment claim brought by Plaintiff pursuant to 42 U.S. C. §§ 1983, 1985, and 1988 against all Defendants in this action. She seeks recovery and redress for violations of constitutionally-protected civil rights. Then-applicable law was clear that the treatment of Ms. Serrano by the Defendants was unconstitutional. The Fourth and Fourteenth Amendments guarantee all citizens equal protection and treatment under the law. Defendants unreasonably, unfairly, and unnecessarily targeted Ms. Serrano denied her medical care with reckless and wanton disregard to serious medical needs due to her status as a latina woman who refused to clean the jail and Doe 1 used unreasonable excessive force.

42. Defendants placed Ms. Serrano in a solitary cell without any monitoring. The policies and practices such as delaying and depriving medical care to inmates and forbidding emergency medical attention to inmates in the Galveston County Jail unless the inmates are at the brink of death, and only by the medical department personally caused the

unreasonable risk of harm to inmates at the Galveston County Jail.

43. These policies and practices are the moving force behind the cause of the mental anguish and physical injuries suffered by Ms. Serrano.

44. Sheriff Trochesset and Defendants were aware there would be inmates, like Ms. Serrano, who required supervision and medical care.

45. Sheriff Trochesset and medical defendants had a duty to provide medical care to the inmates, and this duty was non-delegable.

46. Sheriff Trochesset was personally involved in the constitutional deprivation of Ms. Serrano because he was responsible for the inmates' medical care, namely, their health, safety, and welfare.

47. Defendants, Trochesset and Killyon are final policymakers as to the policies that govern inmate care in Galveston County, including medical care and the use of excessive force. Supervisory Defendants failed to promulgate policies governing the transportation of inmates for emergency services which directly resulted in Ms. Serrano's suffering constitutional deprivation.

48. Supervisory Defendants, Killyon and Trochessett failed to supervise or train employees, including Doe Defendants as to procedures and practices necessary to protect individuals' constitutional rights in the appropriate use of excessive force, and to recognize and respond to a patient with a serious medical need. Supervisory Defendants' failure to train or supervise resulted in the violation of Ms. Serrano's rights being violated under the Eighth Amendment.

49. Supervisory Defendant's failure to train or supervise amounts to deliberate

indifference to the known or obvious consequences and in violation of well settled law. The egregious deprivations of Ms. Serrano's constitutional rights were a known and obvious consequence of Supervisory Defendants' failure to train or supervise.

50. In 2018, Walter Stroop died in a county jail that VitalCore serves. The facility's medical and corrections staff failed to properly monitor Stroop to treat a worsening heart condition. The news report stated that the medical staff allegedly gave him the drug clonidine, which can interact with heart medications. Stroop was found unresponsive in his cell on Dec. 2, 2018, the same day he was scheduled to be released.

51. Sheriff Henry Trochesset is the policymaker for the county with respect to policies and procedures at the Galveston County Jail ("Jail"). As a result, sheriff Trochesset adopted the policies of the Medical Provider, Vita Core.

52. According to the Attorney General's Custodial Death report, in the past five years, at[1] least nine inmates have died in the custody of Galveston County Jail due to the delay and denial of medical care. These are just a few examples:

53. On February 28, 2016, an unborn child of Denise Pope died. Ms. Pope's child died after she did not receive prenatal care, and began to hemorrhage for hours. She was given a blanket by the only medical person on duty, an LVN, to soak up the blood until a Sargent insisted the LVN order Ms. Pope's transport to the emergency room. Pope was required to experience undue pain and suffering and the loss of her child due to Galveston County's adopted policy from their Medical Contractor, Boon Chapman, and Soluta. See, paragraph 78 below.

54. On June 27, 2013, Arthur Lee Linear was pronounced dead as a result of Galveston

---

[1] https://oagtx.force.com/cdr/cdrreportdeaths

County's policy on refusing to send Mr. Linear to the hospital when his vitals were unstable and he required serious emergency Medical care after complaining of chest pains, resulting in a delay in medical care and ultimately causing his untimely and preventable death.

55.     On March 15, 2015, 32-year-old Jesse Clayton Jacobs was pronounced dead as a result of Galveston County's policy on refusing to send Mr. Jacobs to the hospital although his vitals were unstable and he requires serious emergency medical care after depriving him of this physician prescribed and monitored Xanax prescription, resulting in a delay in medical care and ultimately causing his untimely preventable death.

56.     Jesse's physician Dr. La Grone, wrote a letter directly to the jail stressing the importance of his Xanax and other medications and that he needed all of the medication every day. Boone Chapman's Soluta health administrator, Defendant Kathy White, ordered Jesse be placed in solitary confinement punitive cell, with no toilet, sink, or bed, after he suffered his first seizure on his 4th day in custody. She ordered that his clothes be taken, he was left nude without shoes as he withdrew from the Xanax that he took for 10 years under the supervision of his psychiatrist Jesse had seizures every day while held in a solitary cell, alone, nude, and tortured. He was found bleeding, unresponsive, and in his own feces and vomit. He died one day later.

57.     On February 28, 2016, Ms. Denise Pope's unborn child was pronounced dead as a result of Galveston County's policy on refusing to send inmates to the Hospital that require Medical care, after the pregnant inmate complaining of initially spotting then heaving bleeding, resulting in a delay in medical care and ultimately causing her untimely preventable death of her unborn child.

58.    There are other deaths of individuals that occurred after being held in custody who never came home from the jail or released from jail but died after being transported to the hospital and "released" meaning from jail oversight, prior to their deaths.

59.    The individuals were only released after hospital admission, not only to save money paying for a guard at the hospital, and the medical bills, but primarily, when the prognosis is grim and they could avoid reporting yet another custodial death, and not so their family can visit because the sheriff has full discretion to allow extended visits to those in custody as they suggest.

60.    For example, **Jorge Cortez** never returned home after entering the Galveston jail waiting for transport to a rehabilitation center. He became increasingly ill suffering from a highly fatal form of cancer, although only in the early stages. After numerous pleas for help, submitting an estimated twenty written sick call requests for care, along with a medical care grievance submitted to Kathy White complaining that although he was going to a clinic the LVN, Terry Hanelane refused to get him the care he needed or get him to a person licensed to provide him with care for an examination. His written and verbal complaints about his need for medical care for his serious medical needs. He complained of difficulty breathing and persistent complaints of severe pain for over a week on one occasion without treatment by a physician or an exam, although he was too weak to eat or get out of bed. He was too weak to ambulate and needed a wheelchair.

61.    He was transported to the hospital in need of an emergency procedure to rapidly alleviate four liters of fluid from Cortez's lungs.

62.    Cortez was "released" from Galveston jail custody after he was diagnosed with cancer

and his prognosis was grim. They continued to check on his condition although he was "released."

63. Mr. Cortez died on June 19, 2017. His death was not reported to the attorney general of Texas as a custodial death, although he never made it home from jail, and Galveston county maintained his personal property. There are likely other deaths that went unreported.

64. On November 15, 2017, **Ms. Jerry Louise Biggers-Hill** was pronounced dead as a result of Galveston County's policy on refusing to send inmates to the Hospital that require serious emergency medical care after complaining of breathing difficulty, resulting in a delay in medical care and ultimately causing her untimely preventable death.

65. On December 22, 2017, **Mr. Barry Edward Phillips** was pronounced dead as a result of Galveston County's policy on refusing to send inmates to the Hospital that require serious emergency Medical care after complaining of breathing difficulty, resulting in a delay in medical care and ultimately causing his untimely preventable death.

66. On March 14, 2019, **Cotton Glen Ronald,** while in custody at the Galveston County jail died due to medical reasons while under the care of Soluta after the defendants failed to adequately respond to his serious medical needs involving his dehydration symptoms.

67. On December 25, 2019, **Ronald Different,** while in custody at the Galveston County jail died due to medical reasons while under the care of Soluta after the defendants failed to adequately respond to his serious medical needs involving his cancer symptoms.

68. In December 2020, **Ariel Ledesma,** while in custody in the Galveston County Jail was brutalized at the hands of its officers. The officer banged the defenseless Mr. Ledsma's

head against the wall until the officer got tired and quit. Mr. Ledesma was denied medical care after he the excessive use of force. He suffered severe life-threatening injuries. Although he had serious medical needs due to his condition he was not transported to the hospital until his condition became critical. Ledesma died. Wunnbeburger was indicted for manslaughter in the death.

69. Medical staff delayed starting CPR by about five minutes in the New Mexico facility serviced by VitalCore. These are the same claims against the individual physician VitalCore intentionally hired but was negligent in discovering his history of delaying medical care to inmates as a matter of routine. Nonetheless, he fit the culture of VitalCore.

70. As a result of her experience at the Galveston jail under the care of Dr. Garry Killyon Ms. Serrano suffered mental anguish, interfering with her ability to sleep, eat,

71. Further, Galveston Jail employees, Doe 2, 3, and 4 have denied Ms. Serrano of her medical records in an attempt to conceal the denial of care she attempted to retrieve her medical records on three separate occasions but was denied. Her treating physician was also denied access to the medical records by Doe 5 held by Galveston County and its health care provider VitaCore further impeding her ability to gain appropriate follow up care.

a. *Medical Negligence in violation of the Texas Healthcare Liability Act against Dr. Killyon and VitalCore*

72. Plaintiff incorporates by reference all paragraphs contained herein.

73. This is a medical negligence claim brought by Plaintiff for violations of the Texas Healthcare Liability Act against Dr. Killyon.

74. Dr. Killyon and the medical contractor had a duty to provide adequate medical care

to Ms. Serrano.

75. VitalCore negligently hired Dr. Killyon, and allowed, the prior health care provider under contract with Galveston County jail, Boon Chapman's policies and practices of denying care and failing to discipline and train its employees to continue. The negligent hiring and failures were the moving force behind the constitutional violation suffered by Ms. Serrano delay and denial of medical care.

76. VitalCore took over the jail medical contract, from Boon Chapman, with Galveston county in October 2020, but it continued to employ the individuals who have a well-known history of violating the rights of those held in the custody of the Galveston County Jail in need of medical care, specifically Dr. Gary Killyon. This is the standard adopted practice of Vitacore. Dr. Killyon remains as the medical supervisor setting forth the policies and procedures in the jail in regards to jail medical treatment for inmates.

## **DAMAGES**

77. Plaintiff seeks all damages allowed by law as a result of the aforementioned forming the basis for each of her causes of action. Plaintiff requests damages within the jurisdictional limits of the Court including:

78. Physical pain and mental anguish;

79. Loss of earning capacity and lost wages;

80. Disfigurement;

81. Physical impairment;

82. Medical care expenses;

83. Out-of-pocket economic losses;

84. Loss of consortium;

85. other expenses related to injuries of Ms. Serrano

86. exemplary/punitive damages against VitaCore, and Dr. Garry Killyon.

87. Plaintiff's reasonable and necessary attorneys' fees under 42 U.S.C. 1988;

88. Costs of court;

89. Pre-judgment and post-judgment interest at the highest rates allowable by law;

90. Injunctive relief against Defendants; and

91. For such other and further relief, both general and special, at law and in equity, to which Plaintiff may show herself entitled.

92. The damages sustained by Ms. Serrano were approximately caused by the Defendants as set forth herein.

## ATTORNEYS FEES

After prevailing herein, Plaintiff is entitled to recover reasonable and necessary attorney fees and costs to enforce her constitutional rights under 42 U.S.C. § 1983 and 1988 from Defendants.

Plaintiff prays that he has a judgment against Defendants for actual damages shown and proven at trial, for prejudgment, post-judgment interest, for costs of court, and for all other relief, legal and equitable, to which he is entitled.

By: /s/ U.A. Lewis
U.A. Lewis
Texas State Bar No. 24076511
Federal Bar Number
The Lewis Law Group

P.O. Box 27353<br>
Houston, TX 77227<br>
T: (713) 570-6555<br>
F: (713) 581-1017<br>
myattorneyatlaw@gmail.com

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been forwarded to each counsel of record through ECF on the date of this filing, February 8, 2023.
/s/ U.A. Lewis
U.A. Lewis